LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| VICTOR LOPEZ, *on behalf of himself,*<br>*FLSA Collective Plaintiffs, and the Class,* | Case No.: |
|     Plaintiff, | **CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |
| | **Jury Trial Demanded** |
| DUBLIN 6 AT 115 BROADWAY, INC.<br>    d/b/a TRINITY PLACE,<br>COBRA CATERERS, INC.<br>    d/b/a HUDSON HOUND,<br>HHJC1 LLC<br>    d/b/a HUDSON HOUND,<br>KATHLEEN CONNOLLY,<br>DONAL CROSBIE, and<br>JASON O'BRIEN, | |
|     Defendants. | |

---

Plaintiff, VICTOR LOPEZ ("Plaintiff") on behalf of himself and FLSA Collective

Plaintiffs and the Class, by and through his undersigned attorney, hereby files this Class and

Collective Action Complaint against Defendants DUBLIN 6 AT 115 BROADWAY, INC. d/b/a

TRINITY PLACE, COBRA CATERERS, INC. d/b/a HUDSON HOUND, HHJC1 LLC d/b/a

HUDSON HOUND (collectively, "Corporate Defendants"), KATHLEEN CONNOLLY, DONAL

CROSBIE, and JASON O'BRIEN (collectively, "Individual Defendants", and together with

Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including, overtime due to an invalid tip credit, (3) illegal retention of gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including overtime, due to an invalid tip credit, (3) illegal retention of gratuities, (4) unpaid spread of hours premiums, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3. Plaintiff further alleges, pursuant to the New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including overtime, due to invalid tip credit, (3) illegal retention of gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.  Plaintiff, VICTOR LOPEZ, is a resident of Hudson County, New Jersey.

7.  At all relevant times, Defendants have owned and operated the following restaurants located in New York and New Jersey:

    a.  Trinity Place – 115 Broadway, New York, NY 10006 ("Trinity Place");

    b.  Hudson Hound – 575 Hudson Street, New York, NY 10014 ("Hudson Hound NY");

    c.  Hudson Hound – 8 Erie St A, Jersey City, NJ 07302 ("Hudson Hound NJ", together with the above mentioned restaurants, the "Restaurants").

8.  Defendants have operated the Restaurants as a single integrated enterprise, under the control and ownership of the Individual Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

    a.  The Restaurants are under the control of Individual Defendants. Specifically, Individual Defendants KATHLEEN CONNOLLY, DONAL CROSBIE, and JASON O'BRIEN own and operate the Restaurants. *See* **Exhibit A,** Trinity Place's public corporate record. *See* also **Exhibit B,** an article identifying Individual Defendants as owners of Trinity Place and Hudson Hound.

    b.  The Restaurants are engaged in the same business of providing food service, hosting private events, and catering. All Restaurants have a "Modern Irish" theme and cuisine. *See* **Exhibit C,** Defendant's websites.

    c.  On the "About Us" section of the website for all three of the Restaurants, Defendants advertise: "Our design-led spaces are warm and classic allowing intimate conversation as well as celebration. Snug sessions, banquets, or a stool at our white oak bar." The

only difference to this particular description on Defendants' About Us website is that Trinity Place references a "40ft oak bar" rather than a "white oak bar." *See* **Exhibit C**. *See also* Defendants' websites, available at: https://trinityplacenyc.com/; https://hudsonhoundnyc.com/#; https://hudsonhoundjc.com/#

d. All three of the Restaurants offer gift cards through "Gift Up", which are available for purchase on the various Restaurant Websites. Hudson Hound NYC and Hudson Hound NJ offer identical gift cards which can be used at either restaurant. *See* **Exhibit D**.

e. Hudson Hound NYC and Hudson Hound Jersey City share the same logo, as advertised on their various websites, gift cards, and social media. *See* **Exhibit E**.

f. The "Privacy Policy" of all three of Defendants' Restaurants which are displayed on their websites are identical in substance, with an "Effective Date of December 31, 2019"; and also "SMS Mobile Message Management Program Terms and Conditions" that are also identical in substance and "Last revised: July 26, 2023." These polies are available on the various "Careers" pages on Defendants' websites inviting potential employees to sign up apply for employment and sign up for announcements about events. *See* **Exhibit F.**

g. The Restaurants often transfer and interchange supplies and employees. Plaintiff was regularly scheduled to work at both Trinity Place and Hudson Hound NJ in a work week. He was also assigned to Hudson Hound NY on an as-needed basis.

h. The Restaurants share the same payroll methods and have a single, centralized system of labor relations for employees. This is confirmed because Plaintiff was issued a single paystub per pay period despite having to work for either of the three locations.

9. Corporate Defendant DUBLIN 6 AT 115 BROADWAY, INC. d/b/a TRINITY PLACE

is a domestic business corporation organized under the laws of New York State and registered to do business in New York State, with a principal place of business and a registered address for service of process at 115 Broadway, New York, NY 10006.

10. Corporate Defendant COBRA CATERERS, INC. d/b/a HUDSON HOUND is a domestic business corporation organized under the laws of New York State and registered to do business in New York State, with a principal place of business located at 575 Hudson Street, New York, NY 10014 and a registered address for service of process at c/o Bennett Rice & Schure, 255 Merrick Road, Rockville Centre, NY 11571.

11. Corporate Defendant HHJC1 LLC d/b/a HUDSON HOUND is a domestic business corporation organized under the laws of the state of New Jersey and registered to do business in New Jersey, with a principal place of business located at 8 Erie St A, Jersey City, NJ 07302 and a registered address for service of process at 99 Montgomery Street PH 2, Jersey City, NJ 07302.

12. Individual Defendant KATHLEEN CONNOLLY is the principal, co-owner, and executive officer of the Corporate Defendants. Individual Defendant KATHLEEN CONNOLLY exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class members. Individual Defendant KATHLEEN CONNOLLY had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class members. At all times, employees of Corporate Defendant could complain to Individual Defendant KATHLEEN CONNOLLY directly regarding any of the terms of their employment, and Individual Defendant KATHLEEN CONNOLLY would have the authority to effect any changes to the quality and terms of employees' employment. Individual Defendant KATHLEEN CONNOLLY directly reprimanded any employee who did not perform

his duties correctly. Individual Defendant KATHLEEN CONNOLLY exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant KATHLEEN CONNOLLY is responsible for setting company policies and has actual control and responsibility over all of Corporate Defendants' compliance and adherence to laws as well as setting pay rates for employees.

13. Individual Defendant DONAL CROSBIE  is a co-owner and principal of Corporate Defendants. Individual Defendant DONAL CROSBIE  exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class members. Individual Defendant DONAL CROSBIE had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class members. At all times, employees of Corporate Defendants could complain to Individual Defendant DONAL CROSBIE directly regarding any of the terms of their employment, and Individual Defendant DONAL CROSBIE would have the authority to effect any changes to the quality and terms of employees' employment. Individual Defendant DONAL CROSBIE directly reprimanded any employee who did not perform his duties correctly. Individual Defendant DONAL CROSBIE exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant DONAL CROSBIE is responsible for setting company policies and has actual control and responsibility over all of Corporate Defendants' compliance and adherence to laws as well as setting pay rates for employees.

14. Individual Defendant JASON O'BRIEN is a co-owner and principal of Corporate Defendants. Individual Defendant JASON O'BRIEN exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class members. Individual Defendant

JASON O'BRIEN had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class members. At all times, employees of Corporate Defendants could complain to Individual Defendant JASON O'BRIEN directly regarding any of the terms of their employment, and Individual Defendant JASON O'BRIEN would have the authority to effect any changes to the quality and terms of employees' employment. Individual Defendant JASON O'BRIEN directly reprimanded any employee who did not perform his duties correctly. Individual Defendant JASON O'BRIEN exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant JASON O'BRIEN is responsible for setting company policies and has actual control and responsibility over all of Corporate Defendants' compliance and adherence to laws as well as setting pay rates for employees.

15. At all relevant times, Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

16. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members were directly essential to the business operated by Defendants.

17. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons, including, but not limited to, hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters, employed by Defendants on or after the date that is 6 years before the

filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

19. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them wages for all hours worked, including overtime, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs. There is also a sub-collective of tipped employees ("Tipped FLSA Collective Plaintiffs") that have a claim for unpaid wages, including overtime, due to an invalid tip credit, and a claim for damages due to Defendants' illegal retention of gratuities. Plaintiff is a member of both the collective and the sub-collective.

20. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first-class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all persons, including, but not limited to, hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters, employed by Defendants, throughout New York State and New Jersey State, on or after the date that is 6 years before the filing of the Complaint in this case as defined herein (the "Class Period").

22. Plaintiff will seek to certify claims under NYLL for Class members who performed work for Defendants in New York ("New York Class members") and under NJWHL and NJWPL for Class members who performed work for Defendants in New Jersey ("New Jersey Class members").

23. At all relevant times, Plaintiff and Class members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to pay all wages owed due to a policy of time shaving.

24. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than 40 members of the Class. Moreover, each Class, the New York Class and the New Jersey Class, includes over forty (40) members as well. Both the New York Class and the New Jersey Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than 40. Plaintiff is a member of both the Class and the Tipped Subclass.

26. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay proper wages, including overtime, due to time shaving. Additionally, all of the New York Class members were subject to the same corporate practices of Defendants of: (i) failing to pay spread of hours premium, (ii) failing to provide wage and hour notices, at date of hiring and annually, per requirements of the NYLL, and (iii) failing to provide proper wage statements per requirements of NYLL.

27. With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL, NJWHL and NJWPL. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for all tipped employees' continuous periods of 30 minutes or more of directly supporting, non-tipped related activities, non-tipped duties, (iv) illegally retained gratuities, (v) failed to provide proper wage statements indicating correct tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

28. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages

arising from the same unlawful policies, practices, and procedures.

29. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is

empowered to, fashion methods to efficiently manage this action as a class action.

31. Defendants and other employers throughout the state of New York and New Jersey violate the NYLL, NJWHL, and NJWPL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL, NJWHL, and NJWPL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

e) Whether Defendants properly compensated Plaintiff and Class members for all hours worked, including overtime;

f) Whether Defendants compensated Plaintiff and Class members for all hours worked, including overtime, due to time shaving;

g) Whether Defendants operated their business with a policy of failing to pay minimum and overtime wages to Plaintiff, and Class members for all hours worked due to an invalid tip credit;

h) Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

i) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or 2 hours of their workweek;

j) Whether Defendants claimed a tip credit for tipped employees' engaged in continuous periods of 30 minutes or more in non-tipped duties;

k) Whether Defendants retained any portion of the gratuities of tipped employees;

l) Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL, NJWHL, and NJWPL;

m) Whether Defendants provided proper wage statements informing tipped employees of the amount of tip credit taken for each payment period;

n) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

o) Whether Defendants failed to pay spread of hours premiums for shifts worked over ten (10) hours, in violation of the NYLL;

p) Whether Defendants provided wage notices, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL; and

q) Whether Defendants provided proper wage statements reflecting all hours worked by Plaintiff and Class members, and other information required to be provided on wage statements, as required under the NYLL.

**STATEMENT OF FACTS**

33. Plaintiff was hired by Defendants in or around 2006 to work as a Food Runner at Defendants' Trinity Place restaurant located at 115 Broadway, New York, NY 10006 and at Defendants' Hudson Hound NJ restaurant located at 8 Erie St A, Jersey City, NJ 07302. Plaintiff was also occasionally assigned, on an as-needed basis, to Defendants' Hudson Hound NY restaurant located at 575 Hudson Street, New York, NY 10014. Plaintiff's employment was terminated in or around October 2023.

34. Throughout his employment, Plaintiff was regularly scheduled to work at: (1) Trinity Place, from 10:30 a.m. to 9:00 p.m. on Tuesdays and Wednesdays, and from 10:30 a.m. to 4:00 p.m. on Thursdays and Fridays; then at (2) Hudson Hound NJ, from 10:30 a.m. to 4:00 p.m. on Saturdays and Sundays, for a total of forty (40) hours per week.

35. Throughout his employment, Plaintiff was required to arrive before 10:00 a.m., to do non-tipped side work as detailed below. Although he was required to work before his scheduled time, these pre-shift hours were not compensated, resulting in about three (3) hours weekly of unpaid overtime compensation. Similarly, FLSA Collective and Class members were required to arrive early to work but were not paid for the pre-shift hours.

36. Throughout his employment, Plaintiff was entitled to a 30-minute lunch break every workday which was automatically deducted from his hours. However, half the time, his lunch break was interrupted by Defendants who would require him to engage in work. Whenever new customers came in, Defendants would get Plaintiff and require him to serve the new customers even if Plaintiff was on a break. Despite working through his meal break, Plaintiff was still automatically and improperly deducted a full meal break. Similarly, FLSA Collective Plaintiffs and Class members who were required to work during their lunch breaks were still deducted thirty

(30) minutes for meal break even when the worked through meal breaks.

37. As illustrated above, there are days where Plaintiff was required to work a shift that exceeds ten (10) hours in duration. Specifically, every Tuesday and Wednesday, Plaintiff was required to work for approximately eleven (11) hours, including time worked before his scheduled shift and during his meal break. However, despite working in excess of ten (10) hours per shift, Plaintiff was not paid any spread of hours premium. Similarly, the New York Class members who were required to work beyond ten (10) hours a shift were not paid any spread of hours premiums.

38. At all relevant times, Plaintiff, Tipped FLSA Collective Plaintiffs, and the Tipped Subclass ("tipped employees") were paid at tip credit minimum wage rates. With respect to Plaintiff and other tipped employees, Defendants were not entitled to claim any tip credit allowance under FLSA, NYLL, NJWHL and NJWPL because Defendants: (i) failed to properly provide tip credit notice at hiring and with every change in rate of pay thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for all tipped employees' continuous periods of 30 minutes or more of directly supporting, non-tipped related activities, non-tipped duties, (iv) illegally retained gratuities by allowing managers and employees that did not serve customers to share tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

39. Throughout their employment, tipped employees, including Plaintiff, were required to engage more than 20% of their working time in non-tipped related activities. At each of the three locations, Plaintiff was required to variously engage in the following non-tipped duties: filling up ketchup bottles, cleaning the work station, sweeping, and cleaning, among others. In addition,

Plaintiff was required to engage in setting up the outdoor area, fixing tables and chairs, preparing sauces, filling up ketchup bottles, doing roll ups, polishing silver and glassware, taking out the garbage, doing porter work, and doing barista work, among others. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

40. Additionally, Defendants illegally claimed an invalid tip credit for tipped employees' continuous periods of 30 minutes or more of directly supporting, non-tipped related activities, non-tipped duties, including, but not limited to, setting up the outdoor area, fixing tables and chairs, preparing sauces, filling up ketchup bottles, doing roll ups, polishing silver and glassware, taking out the garbage, doing porter work, doing barista work, and cleaning the basement. Plaintiff worked these 30 minutes or more continuous periods before his scheduled shift, during downtime, and towards the end of his scheduled shift. Defendants improperly claimed tip credit for continuous periods of 30 minutes or more of directly supporting, non-tipped related activities, non-tipped duties worked by tipped employees.

41. Tipped employees, including Plaintiff, further suffered from Defendants' policy of illegally retaining tips. For instance, in Hudson Hound NJ, the manager, Sarah [LNU], participated in the tip pool sometime in 2023. Sarah [LNU] would go behind the bar and serve one (1) or two (2) to justify herself being in the tip pool. When questioned by Plaintiff, Sarah just responded "I have a deal with the owner. I can do this." This unlawful practice happened frequently, and all tipped employees suffered from it. Otherwise, Sarah spent 95% of her time supervising employees.

42. Throughout his employment, Plaintiff has not been provided with any tip credit notices, from Defendants. Tipped FLSA Collective Plaintiffs and Tipped Subclass members were similarly not provided with tip credit notices from Defendants.

43. Throughout his employment, Plaintiff has not been provided with any wage notices, from Defendants. New York Class members were similarly not provided with wage notices from Defendants.

44. Plaintiff was not provided with proper wage statements from Defendants because the wage statements failed to: (1) account for all of his hours worked, and (2) accurately reflect proper pay rates. New York Class members were similarly not provided with proper statements.

45. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

46. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and New York Class members. Defendants' conduct actually harmed Plaintiffs and New York Class

members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and New York Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

47. Had the wage statements Defendants provided to Plaintiff and New York Class members accurately listed the total number of hours Plaintiff and New York Class members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiff and New York Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

48. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and New York Class members. This delayed payment caused Plaintiffs and New York Class members to struggle to pay bills and other debts.

49. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

50. The direct effect of failing to state the number of hours an employee worked and the

corresponding proper pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, \*5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

51. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, \*7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

(1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

52. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

53. Here, it is clear that Defendants' failure to provide Plaintiff and New York Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and New York Class members. That, in turn, would have increased Plaintiff's and New York Class members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

54. Courts agree that the misreporting of wages constitutes a concrete injury cognizable

under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

55. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and New York Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

56. Whether or not any New York Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

57. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the

government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

58. Here, the problem is not merely challenging but insurmountable. Plaintiff and New York Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and New York Class members. The problem, rather, is that Plaintiff and New York Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

59. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked, including overtime, due to Defendants' policy of time shaving.

60. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, New York Class members spread of hours premium for shift worked in excess of ten (10) hours.

61. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, Tipped FLSA Collective Plaintiffs, and Tip Subclass members the proper minimum statutory wage for all hours worked, including overtime, due to invalid tip credit.

62. Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities, pursuant to the FLSA, NYLL, NJWHL, and NJWPL.

63. Defendants knowingly and willfully failed to provide wage notices to Plaintiff and New York Class members, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

64. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New York Class members proper wage statements as required under NYLL.

65. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

66. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiff and Tipped Subclass members, as required by NYLL § 195(3).

67. Due to Defendants' FLSA, NYLL, NJWHL and NJWPL violations, Plaintiff, FLSA Collective Plaintiffs and Class members are entitled to recover from Defendants their unpaid wage, including overtime, illegally retained gratuities, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the FLSA and the NYLL.

68. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class members were

required to comply with Defendants' instructions as to when, where, and how to carry out their work. Defendants instructed Plaintiff, FLSA Collective Plaintiffs, and Class members on the time, location, and manner in which work was to be performed.

69. At all relevant times, Plaintiff's, FLSA Collective Plaintiffs' and Class members' full-time work schedules were set by Defendants. All FLSA Collective Plaintiffs and Class members were subject to the same employment policies under Defendant.

70. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

71. Plaintiff realleges and incorporates all the foregoing allegations of this Class and Collective Action Complaint as if fully set forth herein.

72. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

73. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

75. At all relevant times, Defendants had a policy and practice of failing to pay proper

wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs due to Defendants' policy of time shaving.

76. At all relevant times, Defendants willfully violated Plaintiff and FLSA Collective Plaintiffs rights by failing to pay wages in the lawful amount for all hours worked, including overtime, due to an invalid tip credit allowance.

77. At all relevant times, Defendants had a policy and practice of unlawfully retaining gratuities from Plaintiff and Tipped FLSA Collective Plaintiffs.

78. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79. Defendants knowingly and willfully disregarded the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime, when Defendants knew or should have known such was due.

80. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

81. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

82. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of: (i) unpaid wages, including overtime, due to time shaving, (ii) unpaid wages, including overtime, due to an invalid tip credit, (iii) damages representing disgorgement of illegally retained gratuities, plus (iv)

an equal amount as liquidated damages.

83. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

84. Plaintiff realleges and incorporates all the foregoing allegations of this Class and Collective Action Complaint as if fully set forth herein.

85. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

86. At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation for all hours worked, including overtime, due to a policy of time shaving.

87. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and Class members their proper wages, including overtime, due to Defendants' invalid tip credit.

88. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and New York Class members spread of hours premiums for shifts exceeding ten (10) hours.

89. Defendants willfully violated Plaintiff's and Class members' rights by illegally retaining gratuities by allowing managers and employees that did not perform tip duties to share in tips.

90. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not properly notifying employees of their overtime rate, in direct violation of NYLL.

91. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New York Class members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

92. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and New York Class members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

93. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiff and New York Tipped Subclass members, as required by NYLL § 195(3).

94. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements with every payment issued to Plaintiff and New York Class Members, as required by NYLL § 195(3)

95. Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their (i) unpaid wages, including overtime, due to time shaving, (ii) unpaid wages, including overtime, due to an invalid tip credit, (iii) unpaid spread of hours premiums, (iv) damages representing disgorgement of illegally retained gratuities, (v) reasonable attorneys' fees, (vi) liquidated damages, (vii) statutory penalties, and (viii) costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## VIOLATIONS OF THE NEW JERSEY WAGE AND HOUR LAW

## ON BEHALF OF PLAINTIFF AND NEW JERSEY CLASS MEMBERS

96. Plaintiff realleges and incorporates all the foregoing paragraphs of the Class and Collective Action Complaint as if fully set forth herein.

97. At all relevant times, New Jersey Class members were employed by the Defendants within the meaning of the NJWHL. N.J. Stat. Ann. § 34:11-56a1(h).

98. NJWHL requires that covered employees be compensated for all hours worked.

99. Defendants knowingly and willfully failed to pay New Jersey Class members all wages owed due to their time shaving policy, in violation of the NJWHL.

100.    Defendants knowingly and willfully failed to pay New Jersey Class members all wages owed due to an invalid tip credit, in violation of the NJWHL.

101.    Pursuant to N.J. Stat. Ann. § 34:11-56a25, employers, such as Defendants, who fail to pay employee wages in conformance with the NJWHL shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

102.    Due to the Defendants' NJWHL violations, Plaintiff and New Jersey Class members are entitled to recover from the Defendants their unpaid wages, including overtime, reasonable attorneys' fees, liquidated damages and costs and disbursements of the action, pursuant to the NJWHL.

**COUNT IV**

**VIOLATIONS OF THE NEW JERSEY WAGE PAYMENT LAW**

**ON BEHALF OF PLAINTIFFS AND NEW JERSEY CLASS MEMBERS**

103.    Plaintiff realleges and incorporates all the foregoing paragraphs of the Class and Collective Action Complaint as if fully set forth herein.

104.    Defendants are employers under NJWPL, N.J. Stat. Ann. § 34:11-4.1(a).

105.    As employees, Plaintiff and the New Jersey Class members are entitled to the protections of the New Jersey Wage Payment Law ("NJWPL"). N.J. Stat. Ann. § 34:11-4.1(b).

106. The NJWPA mandates that an employer "pay the full amount of wages" due to the employee. N.J.S.A. § 34:11-4.2.

107. As set forth herein, Defendants knowingly and willfully violated NJWPL by failing to compensate New Jersey Class members at the proper pay rates for all hours worked.

108. Due to the Defendants' NJWPL violations, Plaintiff and New Jersey Class members are entitled to recover from the Defendants their unpaid wages, including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NJWPL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NJWHL, and NJWPL;

b) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c) An award of unpaid wages, including overtime, due to time shaving due under the FLSA, NYLL, NJWHL and NJWPL;

d) An award of unpaid wages, including overtime, due to an invalid tip credit due under the FLSA, NYLL, NJWHL, and NJWPL;

e) An award of invalidly retained gratuities under the FLSA, NYLL, NJWHL, and NJWPL;

f) An award of unpaid spread of hours premiums due under the NYLL;

g) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA, NYLL, NJWHL, and NJWPL;

i) An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

j) An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

k) Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

l) Designation of this action as a class action pursuant to F.R.C.P. 23;

m) Designation of Plaintiff as Representative of the Class;

n) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:   January 5, 2024
        New York, New York

                                         Respectfully submitted,

                          By:    */s/ C.K. Lee*
                                   C.K. Lee, Esq.

                                   **LEE LITIGATION GROUP, PLLC**
                                   C.K. Lee (CL 4086)
                                   Anne Seelig (AS 3976)
                                   148 West 24th Street, 8th Floor
                                   New York, NY 10016
                                   Tel.: (212) 465-1188

Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*